IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAINE DAVIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NORDSTROM, INC.,<br><br>    Defendant.<br>_____/ | No. C 11-3956 CW<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION (Docket No. 9) AND SETTING CASE MANAGEMENT CONFERENCE |

Defendant Nordstrom Inc. moves to compel arbitration in this case. Plaintiff Faine Davis opposes the motion. Having considered the papers submitted by the parties and their arguments at the hearing, the Court DENIES Defendant's motion.

## BACKGROUND

On August 11, 2011, Plaintiff Faine Davis filed the current case, on behalf of herself and a putative class of salaried Department Managers employed by Defendant. Docket No. 1. She alleges that Defendant violated various California statutes by failing to pay her and putative class members overtime compensation, failing to provide them with meal and rest periods, failing to provide them with accurate itemized wage statements, and failing to provide them with the improperly withheld wages upon termination. Compl. ¶¶ 1-4.

Plaintiff previously brought a case making the same claims against Defendant in the Superior Court for the County of Los Angeles on December 17, 2010, which Defendant then removed to the Central District of California. Notice of Removal, Davis v.

Nordstrom, Inc., Case No. 11-609 (C.D. Cal.) (Davis I), Docket No. 1. That case was voluntarily dismissed without prejudice on April 13, 2011. Davis I, Docket No. 29.

At the time that Plaintiff initiated her first action, Nordstrom had in effect a Dispute Resolution Program (DRP). See Corrected Porter Decl. (Porter Decl.) ¶ 10, Ex. 6; Davis Decl. in Supp. of Mot. for Leave to File Sur-Reply (Davis Decl.) ¶ 9, Ex. B (acknowledging that she received this policy as part of her employee manual). The policy set forth a three step dispute resolution program, what each step consisted of and how employees could access the program, and stated relevant in part,

> Please note that you must use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom, its officers, directors, shareholders, employees or others that arise from or are in any way connected to your current, past or future employment with Nordstrom. . . .
>
> Step 3: Arbitration. . . . If the claim has not been resolved through Steps 1 and 2 of the Nordstrom Dispute Resolution Program, the third step is to use an independent arbitrator instead of a court proceeding, including a jury trial. . . .
>
> Covered and Noncovered Claims. For details regarding what claims are covered in your state, see the included state information sheet. . . .
>
> If any part of the Nordstrom Dispute Resolution Program or subsequent modification of the program is found by a court to be void or unenforceable, the remaining parts of the program will remain in full force and effect. From time to time, it may be necessary to make changes to the program materials to comply with changes in the law. Nordstrom will provide 30 days written notice of substantive changes. This notice is to allow employees time to consider the changes and decide whether or not to continue employment subject to the changes. . . .

Porter Decl. ¶ 10, Ex. 6, 51-56. The text of this version of the dispute resolution policy appeared in Defendant's 2011 Employee

2

Manual. Salassi Decl. in Supp. of Pls.' Am. Sur-reply in Opp. to Defs.' Mot. to Compel (Salassi Decl.) ¶ 3, Ex. A.

From approximately January 2007 to January 2011, Defendant also had in place a California supplement to the dispute resolution policy, which read in part,

> You must use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom, its officers, directors, shareholders, employees or others in their personal or official capacity that arise from or are in any way connected with your current or future employment. Likewise, Nordstrom must also use the Dispute Resolution Program instead of a court proceeding to resolve covered claims against you that arise from or are in any way connected with your current or future employment.
>
> Unless Nordstrom and you otherwise agree to it in writing, the Dispute Resolution Program covers the following legally protected rights: . . .
>
> Any claim for wages or other compensation, including claims for unpaid wages or claims to recover an overpayment of wages due under the Fair Labor Standards Act, the Equal Pay Act and California Labor Code or under any California Wage Order. . . .
>
> Claims for violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance, regardless of whether the common-law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this program, including, but not limited to, the Federal Occupational Safety and Health Act, the Employee Polygraph Protection Act, the Immigration Reform and Control Act, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, 42 U.S.C. Sections 1981 and 1963, the California Pregnancy Leave Act, the California Family Rights Act, and any other claim brought under California's Business and Professional Code or California public policy.

Porter Decl. ¶ 11, Ex. 7, NOR000036. The supplement also listed several types of claims not covered by the Dispute Resolution Program, which are not material here. Id.

3

From January 2011 to July 2011, the California supplement was modified in relevant part to add the following language in the section addressing claims not covered by the dispute resolution program:

> In addition to any civil complaint styled as a class action, or private attorneys general action, the following claims are not covered by the agreement to arbitrate: . . .

Porter Decl. ¶ 12, Ex. 8.

On April 27, 2011, the Supreme Court issued its decision in <u>AT&T Mobility LLC v. Concepcion</u>, 131 S. Ct. 170 (2011), holding that a California judicial rule invalidating class action waivers in certain consumer arbitration agreements is preempted by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, <u>et seq.</u>

In early June 2011, Defendant updated its dispute resolution policy. Porter Decl. ¶ 6. The updated dispute resolution policy maintained the three-step procedure and added a class action waiver. Porter Decl. ¶ 6, Ex. 4. It read in relevant part,

> When This Agreement Applies
>
> . . . This Agreement applies to any disputes arising out of or related to your application for employment with Nordstrom or one of its affiliates, subsidiaries or parent companies ("Nordstrom"), your employment with Nordstrom or the termination of your employment.
>
> . . .
>
> This Agreement is intended to apply to the resolution of past, present and future disputes that otherwise would be resolved in a court of law and requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. The Agreement applies without limitation to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, retaliation (including retaliation under the Employee Retirement Income Security Act of 1974) or harassment and claims

4

arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination In Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and other state and local statutes, addressing the same or similar subject matters, and all other state statutory and common law claims. . . .

The Arbitration Process and Procedures

. . .

<u>You and Nordstrom agree to bring any dispute in arbitration on an Individual basis only, and not on a class, collective, representative or private attorney general basis.  There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions ("Class Action Waiver").</u> Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable.  In such instances, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction.

The Class Action Waiver, and any other provision of this Agreement, shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

Although employees will not be retaliated against, disciplined or threatened with discipline for their exercising rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective, representative or private attorney general action, Nordstrom may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of any such class, collective, representative and/or private attorney general action.

Id. (emphasis in original in bold). The new policy removed any reference to a state-specific supplement, and stated, "This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes." Id. at NOR000007.

The June 2011 dispute resolution policy did not state, as the prior policy had, that Defendant would provide thirty days' written notice of substantive changes, to allow employees time to decide whether or not to continue employment with Defendant subject to the changes, or that continued employment would constitute acceptance of the new policy.

Defendant retained K/P Corporation to distribute copies of the June 2011 dispute resolution policy to its employees, along with a cover letter, which noted that "Step three [Arbitration] of this process was recently updated." Boleda Decl. ¶ 10, Ex. C; Porter Decl. ¶ 8. Defendant provided K/P Corporation with a list of the names and addresses of more than 56,000 Nordstrom employees, including Plaintiff's. Boleda Decl. ¶¶ 2-5, Ex. A, 370. On June 16, 2011, K/P Corporation mailed the updated dispute resolution policy to all of the employees on the list, including Plaintiff. Id. at ¶¶ 12-13.

As previously noted, Plaintiff initiated the instant suit on August 11, 2011. Docket No. 1.

Sometime in August 2011, Defendant again modified its dispute resolution policy. The substantive changes were limited to two sections. First, a sentence was added to the section regarding claims covered by the policy, stating "Private attorney general actions are not subject to this Agreement and therefore must be

6

litigated in a civil court of competent jurisdiction." Porter Decl. ¶ 3, Ex. 1, NOR000013. Second, the section addressing the arbitration process was modified to add a collective action waiver as follows:

> You and Nordstrom agree to bring any dispute in arbitration on an Individual basis only, and not on a class or collective action basis. Accordingly,
>
> (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.
>
> (b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.
>
> Disputes regarding the validity and enforceability of the Class Action waiver and/or the Collective Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.
>
> The Class Action Waiver and Collective Action Waiver, and any other provision of this Agreement, shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.
>
> Although employees will not be retaliated against, disciplined or threatened with discipline for their exercising rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class or collective action, Nordstrom may lawfully seek enforcement or this Agreement, including the Class Action Waiver and the Collective Action Waiver under the Federal Arbitration Act, and may seek dismissal of any such class or collective action.

7

Porter Decl. ¶ 3, Ex. 1, NOR000014-15 (emphasis in original in bold).

In connection with the August 2011 update of the dispute resolution policy, Defendant drafted a document regarding the update, which it circulated to staff members, including to Human Resource Directors and managers, responsible for distributing the policy to other employees. Porter Decl. ¶ 4. The document included questions and answers regarding the policy changes and listed steps to be taken to distribute the update, and stated in part,

> REQUIRED ACTIONS
>
> 1. Meet with your team to rollout updated dispute resolution program
>
> 2. Review Talking Points (below) with your team
>
> 3. Hand out Dispute Resolution program (with Acknowledgement stapled to [sic] on top)
>
> 4. Request and obtain signatures from all employees on acknowledgement forms.
>
> Make a copy of the signed Acknowledgement page and provide it to the employee if the employee requests it.
>
> If an employee refuses to sign the Acknowledgement for any reason, follow-up with them so that they know it is simply an acknowledgment reflecting they received the updated DR Program; it is not an Agreement. We just need to track who received the materials. Let them know if they still choose not to sign, you will notate on the Acknowledgment form that they received the updated Program. Let them know regardless of whether they sign, the updated Program applies to their employment effective immediately.
>
> . . .
>
> TALKING POINTS FOR DEPARTMENT MANAGERS
>
> . . .
>
> - The program has been updated for two main reasons:

8

```
          - to provide further clarification on what claims
            are covered by arbitration

          - to update the phone number

       . . .

       QUESTIONS AND ANSWERS

       Q. Do I have to sign the Acknowledgement form?

       A. The Acknowledgement form simply acknowledges that you
       have received the Program information.  If you choose
       not to sign the Acknowledgement form, HR will document
       that you have received the information.  Regardless of
       whether you sign it, the updated Dispute Resolution
       Program applies to your employment effective
       immediately.
```

Porter Decl. ¶ 4, Ex. 2, NOR000009-10.

In addition, Defendant included a copy of the updated dispute resolution policy as a paycheck attachment for the September 15, 2011 pay period. Id. ¶ 5.

Plaintiff, a department manager who was responsible for distributing the updated dispute resolution policy to other employees within her department, was given a copy of it on August 22, 2011 by a Human Resources Director, Barbara Doctor. Davis Decl. ¶ 2; Doctor Decl. ¶ 5. Doctor told her that "signing the acknowledgment form did not mean we were agreeing or disagreeing to the document, it would only show that we had received it." Id. at ¶ 5. Doctor described the changes to the policy as "small," and did not explain the specific changes. Id. at ¶ 4.

On December 19, 2011, pursuant to a stipulation by the parties, Plaintiff filed a first amended complaint, adding a cause of action under California's Private Attorney General Act (PAGA), California Labor Code § 2699(a). Docket No. 29.

9

LEGAL STANDARD

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable and enforceable. 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement. Id. § 4. See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence). The FAA further provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. § 4. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the

10

arbitrator." AT&T Techs., Inc. v. Commun'cs Workers of Am., 475 U.S. 643, 649 (1986) (citations omitted).

The FAA reflects a "liberal federal policy favoring arbitration agreements." Concepcion, 131 S. Ct. at 1745 (citations and internal quotation marks omitted). A district court must compel arbitration under the FAA if it determines that: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within its terms. Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)). However, the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1746. See also Kilgore v. KeyBank, N.A., 673 F.3d 947, 963 (9th Cir. 2012) ("Concepcion did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved.").

## DISCUSSION

Plaintiff contends that, even if a valid and enforceable arbitration agreement exists, her PAGA claim is outside of the scope of any such agreement. As noted above, the August 2011 DRP, which Defendant asserts is controlling, expressly excludes PAGA claims from its terms and states that these "must be litigated in a civil court of competent jurisdiction." Porter Decl. ¶ 3, Ex. 1, NOR00013. Further, such claims were also excluded from the arbitration agreement prior to the introduction of the June 2011

11

policy. Porter Decl. ¶ 12, Ex. 8. Accordingly, the Court finds that the PAGA claim is outside of the scope of any arbitration agreement between the parties and DENIES Defendant's motion to compel arbitration as to the PAGA claim.

Plaintiff further argues she did not consent to the 2011 DRPs, which mandated that all complaints be brought in arbitration and on an individual basis only. She also contends that the class action waiver is unconscionable, invalid under the California Supreme Court's decision in Gentry v. Superior Court, 42 Cal. 4th 443 (2007), and violative of the National Labor Relations Act (NLRA), as explained in the National Labor Relations Board's decision in D.R. Horton, Inc. and Michael Cuda, 357 N.L.R.B. 184 (2012). Because the Court concludes that Defendant has not

12

established the existence of an enforceable arbitration agreement, it does not reach Plaintiff's latter arguments.[1]

---

[1] The parties dispute the continuing vitality of Gentry after the Supreme Court's decision in Concepcion. Although the Court does not reach the issue, it observes that there has been a difference of opinion between courts as to whether Gentry was impliedly overruled when the Supreme Court explicitly overruled Discover Bank v. Superior Court, 26 Cal. 4th 148 (2005), and found that California's Discover Bank rule was preempted by the FAA. Since the Concepcion decision, at least one state court and several federal district courts have held that "Concepcion effectively overrules Gentry" and have declined to apply the rule set forth in Gentry. Lewis v. UBS Financial Services, Inc., 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011); see also Iskanian v. CLS Transportation Los Angeles, LLC, 206 Cal. App. 4th 949, 960 (2012) (depublished); Morvant v. P.F. Chang's China Bistro, Inc., 2012 U.S. Dist. LEXIS 63985, at *17-22 (N.D. Cal.); Sanders v. Swift Transp. Co. of Ariz., LLC, 843 F. Supp. 2d 1033, 1037 (N.D. Cal. 2012); Valle v. Lowe's HIW, 2011 U.S. Dist. LEXIS 93639, at *16-17 (N.D. Cal.). Other courts have continued to apply the Gentry rule and have stated that a "question exists about whether Gentry survived the overruling of Discover Bank in Concepcion," noting that Gentry decided a different issue than Discover Bank and addressed the vindication of unwaivable statutory rights. Kinecta Alternative Financial Solutions, Inc. v. Superior Ct., 205 Cal. App. 4th 506, 516 (2012); see also Reyes v. Liberman Broadcasting, Inc., 2012 Cal. App. LEXIS 945, at *19-20; Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489, 498 (2011). On September 19, 2012, the California Supreme Court granted a petition for review in Iskanian and is now considering this issue. See Iskanian v. CLS Transportation Los Angeles, LLC, 2012 Cal. LEXIS 8925.

13

Because "arbitration is a matter of contract," "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks and citations omitted). Plaintiff argues that she did not agree to be bound by the June or August 2011 DRPs. Defendant responds that her acceptance of the DRPs was evidenced by her decision to continue her employment.

"General principles of contract law determine whether the parties have entered an agreement to arbitrate." Doubt v. NCR Corp., 2010 U.S. Dist. LEXIS 102484, at *10 (N.D. Cal.). "'As a general rule, silence or inaction does not constitute acceptance of an offer.'" Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002) (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co., 20 Cal. App. 4th 1372, 1385 (1993)). "However, 'where circumstances or the previous course of dealing between the

---

The parties dispute whether enforcement of the arbitration agreement would violate the NLRA, as explained in the National Labor Relations Board's decision in Horton. Courts also are divided on this issue. See, e.g., Jasso v. Money Mart Express, Inc., 2012 U.S. Dist. LEXIS 52538, at *19-28 (N.D. Cal.) (declining to follow Horton); Spears v. Mid-America Waffles, Inc., 2012 U.S. Dist. LEXIS 90902, at *6 (D. Kan.) (same); Reyes, 2012 Cal. App. LEXIS 945, at *43-47 (same); Owen v. Bristol Care, Inc., 2012 U.S. Dist. LEXIS 33671, at *12-13 (W.D. Mo.) (following Horton); Herrington v. Waterstone Mortg. Corp., 2012 U.S. Dist. LEXIS 36220, at *17-19 (W.D. Wis.) (same). Federal courts "may not enforce a contract provision which violates" the NLRA. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 86 (1982). The enforceability of class action arbitration waivers in employment contexts may very well be different in light of the NLRA than the results reached by the Supreme Court in Concepcion, addressing a conflict between state and federal law in a consumer arbitration context, and CompuCredit Corp. v. Greenwood, 132 S. Ct. 665 (2012), addressing the interaction between the FAA and a different federal law in a consumer arbitration context.

14

parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.'" Id. (quoting Beatty Safway Scaffold, Inc. v. B.H. Skrable, 180 Cal. App. 2d 650, 655 (1960)). California courts have recognized that "a party's acceptance of an agreement to arbitrate may be express . . . or implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." Craig v. Brown & Root, 84 Cal. App. 4th 416, 420 (2000). See also Asmus v. Pac. Bell, 23 Cal. 4th 1, 15 (2000).[2] "Although an implied in fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an intent to promise." Friedman v. Friedman, 20 Cal. App. 4th 876, 887 (1993) (internal quotation marks omitted).

In Asmus, the California Supreme Court addressed how employers may terminate or modify a unilateral contract that has been accepted by an employee's performance, such as the pre-2011 arbitration agreement which excepted class actions claims in the case at hand. In discussing consideration and acceptance of such a change, the court held that, "once the promisor determines after

---

[2] Plaintiff's reliance on Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756 (9th Cir. 1997), to support her contention that an employee must explicitly agree to an arbitration agreement is unavailing. In Nelson, the Ninth Circuit held that a knowing agreement to waive a judicial determination and arbitrate disputes is required under certain federal civil rights statutes and related state statutes, based on the text and history of those statutes which evidenced legislative intent to require a knowing waiver. Id. at 760-62. The court did not conclude that such a knowing or explicit agreement was required to arbitrate all labor disputes, including those outside of the civil rights statutes. In the case at hand, Plaintiff asserts claims under state wage and hour laws, not civil rights statutes.

15

a reasonable time that it will terminate or modify the contract, and provides employees with reasonable notice of the change, additional consideration is not required," beyond the promise of continued employment. Id. at 14-15. See also id. at 18 (noting that the employer had "provided more than reasonable notice to the affected employees that it was terminating the policy"). For employees who had received notice of the change and acknowledged it, the court stated, "Continuing to work after the policy termination and subsequent modification constituted acceptance of the new employment terms." Id. at 15.

In several other cases, California state courts have found that an "at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." DiGiacinto v. Ameriko-Omserv Corp., 59 Cal. App. 4th 629 (1997) (implied acceptance of changed rules for future compensation). See also Craig, 84 Cal. App. 4th at 420-22. In Craig, the California Court of Appeal found that an employee accepted an arbitration agreement by continuing her employment for several years after she was twice mailed a memorandum and brochure that stated that all future employment-related disputes would be governed by the arbitration program. 84 Cal. App. 4th at 420-22. The court concluded that, because the plaintiff had received the memorandum and continued to work for the company for more than three years after receipt of the new policy, "she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration." Id. at 422.

16

Applying California law, a Northern District of California court recently noted, "An employee's continued employment has been found to constitute implied acceptance of the changed terms of employment where the employee was informed that his or her continued employment would constitute acceptance of those changed terms." Morvant v. P.F. Chang's China Bistro, Inc., 2012 U.S. Dist. LEXIS 63985, at *9 (N.D. Cal.). In Morvant, the district court found that continued employment did not constitute acceptance of the terms of the arbitration agreement, because "[n]othing in the Arbitration Agreement or accompanying material expressly states that continued employment will constitute acceptance of the terms of the Dispute Resolution Policy." Id. at *9-10. In contrast, in two earlier cases from the Northern District of California, Kruzich v. Chevron Corp., 2011 U.S. Dist. LEXIS 138140 (N.D. Cal.) and Doubt v. NCR Corp., 2010 U.S. Dist. LEXIS 102484 (N.D. Cal.), in which the court found that the employees had accepted an arbitration agreement by continuing their employment, the arbitration agreement itself or material provided by the employer with the agreement specifically stated that continued employment would demonstrate the employee's intent to be bound. Kruzich, 2011 U.S. Dist. LEXIS 138140, at *9-12; Doubt v. NCR Corp., 2010 U.S. Dist. LEXIS 102484, at *9-14. See also Hicks v. Macy's Dep't Store, Inc., 2006 U.S. Dist. LEXIS 68268, at *1-3 (N.D. Cal.) (employee held to be bound by a voluntary arbitration agreement where he failed to return an opt out form and continued employment).

The Court finds that, under the facts presented here, Defendant has not offered sufficient proof that Plaintiff accepted

17

an arbitration agreement that included a class action waiver. Defendant's pre-June 2011 arbitration agreement expressly excluded class action lawsuits from its terms. It further stated that Defendant would provide employees with "30 days written notice of substantive changes . . . to allow employees time to consider the changes and decide whether or not to continue employment subject to the changes." Porter Decl. ¶ 10, Ex. 6, 51-56. Defendant has not submitted evidence that it in fact provided its employees with such notice when it changed the policy in June and August, contrary to the conditions that it had established and communicated for unilateral changes to the arbitration policy. Nor has Defendant shown that it told employees that continued employment as of the date of the changes would constitute acceptance.

Defendant provides a conclusory declaration stating, "In connection with the roll-out of the June 2011 update to the DRP, Nordstrom provided 30-days' notice of the new policy before it was placed into effect. Accordingly, if the first notice was mailed on June 16, 2011, the earliest that the policy would have gone into effect would have been July 16, 2011." Porter Decl. ¶ 9. However, Defendant offers no evidence that it told employees that the policy did not go into effect immediately or that it went into effect thirty days after the notice was mailed. Instead, the evidence in the record establishes that Defendant communicated to employees that the policy went into effect immediately. The cover letter that Defendant provided to K/P Corporation to accompany the updated policy when it was mailed to employees stated, "We've recently made updates to the program and want to ensure that you

18

1 have the current version." Boleda Decl. ¶ 10, Ex. C. Further,
2 Defendant distributed instructions to Human Resources (HR)
3 directors and managers regarding the changes to the DRP, and
4 included a timeline with dates "for all of the changes," which did
5 not include any thirty day delay or notice period. Porter Decl.
6 ¶ 7, Ex. 5. Instead, all dates showing the "timing for all of the
7 changes" were in June 2011. Id. That there was no thirty-day
8 period prior to the time that the new DRP went into effect is
9 further evidenced by the fact that Defendant directed HR personnel
10 to "destroy" old versions of forms related to the DRP process on
11 June 17, not to maintain some of those forms for thirty days. Id.
12 Further, when Defendant implemented the August 2011 update, it
13 instructed employees, including Plaintiff, that the updated policy
14 would apply "to their employment effective immediately." Porter
15 Decl. ¶ 4, Ex. 2, NOR000009-10.

16 Thus, the employees who received the June and August 2011
17 DRPs, including Plaintiff, were not provided reasonable notice of
18 the changes that would have allowed them to decide whether or not
19 to continue their employment in light of the changed policy, and
20 were not told that their continued employment would evidence their
21 intent to be bound. Instead, they were given policies, which they
22 were told were the "current" version or were "effective
23 immediately," and which altered their rights as of that moment
24 regarding the resolution of all disputes with Defendant, including
25 those that had arisen in the past. They were not permitted a
26 reasonable opportunity to leave employment in order to retain
27 their rights to proceed in court rather than arbitration regarding
28 these claims, despite the fact that Defendant previously had

19

promised to make such an opportunity available.  In light of such circumstances, Plaintiff's continued employment does not constitute acceptance of the DRPs.

Accordingly, the Court finds that Defendant has not met its burden to prove the existence of a valid arbitration agreement by a preponderance of the evidence and DENIES its motion to compel arbitration.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion to compel arbitration (Docket No. 9).

The Court SETS a case management conference for Thursday, October 10, 2012 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 9/27/2012

CLAUDIA WILKEN
United States District Judge